UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GENE DIEHL,

                Plaintiff,                Case No. 12-11522
                                                         Honorable Paul D. Borman
                                                          Magistrate Judge David R. Grand

v.

HOPE HUNTER, MELODY HARDY,
SHAR MACOMB INC., and CAROL
TEACHWORTH,

                Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT SHAR MACOMB, INC.'S MOTION TO DISMISS [12] AND DEFENDANTS HUNTER'S AND HARDY'S JOINT MOTION FOR SUMMARY JUDGMENT [22]

After serving a prison sentence on a drunk driving charge, Plaintiff Gene Diehl was paroled – apparently with his consent – to a treatment/rehabilitation facility (the "Facility") operated by SHAR Macomb, Inc. ("SHAR"). (Doc. #1 at 5-6). There, Diehl participated in SHAR's "Safe and Sober" Program. (*Id.*). He claims he was not free to leave the Facility during that portion of his parole, and that he remained "in the control of the M.D.O.C. [Michigan Department of Corrections]" while there. Diehl claims that while he was being held at the Facility, he was denied access to the courts in violation of his constitutional rights. (*Id.* at 3).

Diehl commenced this action while housed at SHAR, alleging that SHAR, one of its employees (Defendant Carol Teachworth), and two MDOC parole officers, Defendants Hope Hunter and Melody Hardy, were liable for the alleged constitutional deprivation. SHAR responded by filing a Motion to Dismiss (Doc. #12), while Hunter and Hardy filed a separate joint Motion for Summary Judgment (Doc. #22). Diehl filed a single response to both motions

(Doc. #26), and SHAR filed a reply in support of its motion (Doc. #27). These motions are before this court for hearing and determination pursuant to 28 U.S.C. §636(b)(1)(B). (Doc. #10). However, the court concludes that oral argument is unnecessary to resolve these motions, and it therefore declines Diehl's request (Doc. #26 at 5) to hold a hearing.

I.      **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant SHAR Macomb, Inc.'s Motion to Dismiss (Doc. #12) be **GRANTED**, that Defendants Hope Hunter's and Melody Hardy's joint Motion to Dismiss (Doc. #22) be **GRANTED**, and that this action be **DISMISSED** as against all Defendants.[1]

II.     **REPORT**

   A.   **Background**[2]

Diehl was convicted of operating a vehicle while intoxicated – 3rd offense, and was sentenced to serve a sentence of between 2 and 7½ years in prison. (Doc. #1 at 5). On December 22, 2011, after having served at least the minimum sentence in prison, Diehl was paroled. (*Id.* at 5-6). However, he was not released into the community at large, but instead, pursuant to his parole "stipulation," was transferred to the custody of SHAR[3] to complete its

---

[1] The docket reflects that Diehl never served Defendant Teachworth with process.

[2] The following factual background is derived from Diehl's complaint, which the court construes as including the letter attached to Diehl's initial filing, as well as from other materials the court may consider at the motion to dismiss stage. *See Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."). Defendants Hunter and Hardy, through their respective affidavits (Doc. #22-2, #22-3), offer additional facts which are also included in this background section. While the court includes those additional facts here, it considers them only with respect to Hunter's and Hardy's motion.

[3] SHAR, Inc. states that it is a non-profit company which serves approximately 1,500 people

"Safe and Sober" program. (*Id.*). While there, Diehl was not free to come and go as he pleased. (*Id.* at 6).

Diehl claims that while at the Facility, he was "denied [] access to the courts." (*Id.* at 3). The gist of Diehl's claim is that, despite his repeated requests of Hunter and Hardy[4], he was not permitted to leave the Facility to go to the Macomb Community College campus or the Warren Public Library, which he claims were the only locations that would afford him access to "the materials and available hours that [he] need[ed] to complete his pro-se motion for appeal [of his underlying conviction] while not conflicting with [his] Safe and Sober courses." (*Id.* at 3, 5-6). Diehl claims that this denial "has at the least delayed [his] appeal if not permanently ruined his chance for an effective appeal." (*Id.* at 3).

Diehl seeks to recover $10,000 per day that he was held at the Facility without being

---

annually through various treatment locations, a long-term transitional facility, and two prison sites. Among its services are a variety of specialty programs, including ones designed for "individuals under correctional supervision (i.e. parole or probation)…." (Doc. #12 at 9).

[4] Hunter avers that she is a Parole Agent for the Michigan Department of Corrections, assigned to its Macomb Parole Office. (Doc. #22-2, ¶1). She states that on January 18, 2012, she met with Diehl and Hardy to discuss "limited resources in regards to filing his appeals case (conviction offense) in court." (*Id.*, ¶3). She notes that Diehl requested access to "the Law Library," and "was advised that an appointment will be scheduled for him with Legal Services provided by SHAR Macomb." (*Id.*). Hunter avers that on March 1, 2012, she met with Teachworth, who reported that Diehl had contacted Legal Services numerous times since his original appointment and was advised that he would be notified as soon as an appointment was available. (*Id.*, ¶4). Hunter avers that "this was the extent of my involvement regarding the facts of [Diehl's] lawsuit." (*Id.*, ¶5).

Hardy avers that she is a Supervisor at the MDOC's Mount Clemens Parole Office. (Doc. #22-3, ¶1). She references the same January 18, 2012 meeting that Hunter described, and states that she "explained to Mr. Diehl that he was paroled from prison to a facility program, Safe and Sober and that he could not just leave the facility at will." (*Id.*, ¶3). She claims she spoke with Teachworth, the Facility's "site administrator," and was advised that Diehl "would be able to make an appointment through Legal Aid once an appointment was confirmed through them." (*Id.*). Lastly, she notes that nothing in Diehl's "work statement" indicated he "could leave MDOC programming. However, accommodations were still attempted by the [Facility]." (*Id.*, ¶4).

3

allowed "access to the courts." (*Id.* at 4). He also seeks a "mechanics lien" against all assets and income from unspecified sources. (*Id.*). SHAR moved to dismiss the action against it under both Fed R. Civ. P. 8(a) and 12(b)(6). (Doc. #12). First, SHAR argues that Diehl's complaint is unduly vague as to its alleged wrongful conduct. (*Id.* at 12). Second, SHAR argues that Diehl's complaint fails to state a claim for relief under Rule 12(b)(6) because "he has failed to allege any wrongdoing by SHAR [] that involved any deprivation of his Constitutional rights." (*Id.* at 13). More specifically, SHAR claims that Diehl "failed to allege that [] SHAR [] is a 'state actor' and subject to suit under 42 U.S.C. § 1983." (*Id.*). Finally, SHAR contends that Diehl failed to allege a proper "actual injury," which it argues is an element of his apparent "First Amendment right of access to the courts claim." (*Id.*).

Defendants Hunter and Hardy also argue that Diehl cannot allege the requisite injury, and that they appropriately discharged their duties as Parole Agents by advising Diehl that "an appointment would be scheduled for him with Legal Services provided by SHAR." (Doc. #22 at 4). Last, they claim that any issues Diehl had with Legal Services were of his own making due to his contacting that office on so many occasions.

Diehl filed a single response to both motions. While he did provide some additional details about the matters alleged in his complaint, he failed to address the substantive merits of the Defendants' motions. Instead, he urges the court to hold an evidentiary hearing, stating that he "see[s] a great need to cross examine and call witnesses," and he lists numerous witnesses who he would like the court to subpoena to testify on his behalf. (Doc. #26 at 3, 5-8).

      B.      **STANDARDS OF REVIEW**

Federal Rule of Civil Procedure 8(a)(2) provides that a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This

requirement dovetails with Fed. R. Civ. P. 12(b)(6)'s pleading requirements. A motion to dismiss filed pursuant to that Rule tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Furthermore, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975) (internal quotations omitted). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir.2004), and their "complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, No. 09-11424, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

Federal Rule of Civil Procedure 56 provides: "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001)

(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989)). Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id*. (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id*. at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

### C. ANALYSIS

#### i. SHAR's Arguments under Fed. R. Civ. P. 8(a) are Not Persuasive

SHAR's first argument is that Diehl's complaint fails to comply with Fed. R. Civ. P. 8(a)(2)'s pleading requirement of providing "a short and plain statement of the claim showing that the pleader is entitled to relief." The court disagrees. While SHAR seems to consider only the first four pages of Diehl's initial filing to be his "complaint" (Doc. #12 at 12), the court finds it is proper to include, as part of his complaint, the two- page letter attached thereto which supplies additional factual information about his claims. (Doc. #1 at 5-6). *Thomas*, 481 F.3d at 437. Read liberally, and as a whole, Diehl's complaint adequately advises SHAR of the nature of his claim against it. As discussed in more detail below, Diehl alleges that he is being held at SHAR's facility, and is not free to leave. (Doc. #1 at 3-6). He asserts that he has a constitutional right to "access to the courts" to appeal his underlying conviction, and he alleges that SHAR denied him that access by refusing to allow him to visit the Macomb Community College

7

campus or the Warren Public Library. (*Id.*). He claims that only by visiting those locations can he obtain the "materials" he needs to pursue his appeal. (*Id.* at 6). Regardless of their merit, these allegations are sufficiently clear to meet Rule 8(a)(2)'s basic pleading requirements.

### ii. SHAR'S Arguments about Its Corporate Form and Diehl's Status as an Inmate Are Not Persuasive

SHAR next argues that dismissal of Diehl's complaint is appropriate under Rule 12(b)(6) because he fails to allege that: (1) "SHAR [] is a prison authority"; and (2) Diehl "is an inmate." (Doc. #12 at 14). The court rejects this argument because, read liberally, Diehl's complaint does make each of these allegations.

The court construes Diehl's complaint as attempting to challenge, under 42 U.S.C. §1983, an alleged denial of his First Amendment right of access to the courts. In order for Diehl to state such a claim under Section 1983, he "must satisfy two elements: (1) the deprivation of a right secured by the Constitution or laws of the United States and (2) the deprivation was caused by a person acting under color of state law. A plaintiff may not proceed under § 1983 against a private party no matter how discriminatory or wrongful the party's conduct." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003). Thus, if SHAR is not a state actor, and could not reasonably be alleged to be one, SHAR would be entitled to dismissal of Diehl's claim against it. *See Boykin v. Van Buren Twp.*, 479 F.3d 444, 451 (6th Cir. 2007). A private party's actions constitute state action under Section 1983 where those actions may be "fairly attributable to the state." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982). "The Supreme Court has developed three tests for determining the existence of state action in a particular case: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test." *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) (en banc).

Under these tests, the resolution of which are necessarily fact-driven, *id.* at 834, Diehl's

allegations at least raise a question of fact as to whether he was an inmate while at SHAR and whether SHAR may be considered a "state actor" in these circumstances – i.e., where it allegedly held Diehl pursuant to his MDOC parole agreement, and prevented him from leaving against his will. (Doc. #1 at 5-6). The fact that Diehl allegedly could not leave the Facility could support an argument that he continued to be an "inmate," and SHAR presented no law to the contrary. Moreover, under the public function test, a private party is deemed to be a state actor if he or she exercised powers traditionally reserved exclusively to the state. *Id.* Certainly, if SHAR can prevent Diehl from leaving the Facility, it is at least arguably acting like a prison in that regard. *See Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) (noting that the Sixth Circuit has treated "a private prison … as a state actor"). Finally, these same allegations could establish state action under the symbiotic or nexus test, because they could show a "sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself." *Chapman*, 319 F.3d at 833-34. Accordingly, the court rejects SHAR's argument as to these issues.

### iii. Diehl Cannot Allege the Type of Injury Required to Support His "Right of Access to the Courts" Claim

Diehl's complaint fatally misapprehends the right it seeks to vindicate. While inmates enjoy a "fundamental constitutional right of access to the courts," *Bounds v. Smith*, 430 U.S. 817, 828 (1977), to state such a claim they "must allege actual injury—that is, actual prejudice to pending or contemplated litigation." *Brown v. Matauszak*, 2009 WL 9070627, at *2 (6th Cir., Jan. 21, 2009) (citing *Lewis v. Casey*, 518 U.S. 343, 349 (1996) and *Harbin–Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005)). The Supreme Court has clarified that "the right to which the actual or threatened harm must pertain … [is the] right of *access to the courts*," not a claimed right to any particular form of litigation tools, such as a law library. *Lewis*, 518 U.S. at 350

9

(italics in original). The *Lewis* Court explained that:

> …the inmate must go one step further [than alleging limitations which prevented him from presenting his most effective appeal][5] and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to ***pursue a legal claim***. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or, that he … was so stymied by inadequacies of the law library that he was unable to even file a complaint.

*Lewis*, 518 U.S. at 351 (emphasis added). The Sixth Circuit has similarly explained that "[e]xamples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578 (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)).

The Sixth Circuit case of *McCurtis v. Wood*, 76 F. App'x 632 (6th Cir. 2003), is instructive here. In that case, McCurtis was an inmate who requested approval for another inmate to assist him with appealing his conviction. Prison officials denied the request, and McCurtis filed suit, claiming that as a result, he had been denied "access to the court to challenge [his] criminal convictions…" *Id.* at 634. The district court dismissed McCurtis' case, finding that he could not satisfy the "actual injury" requirement described above. On appeal, the Sixth Circuit affirmed, reiterating that conclusory, speculative assertions of prejudice are insufficient to state a claim for denial of access to the courts:

> McCurtis's access to the courts claim is without merit. To demonstrate that the defendants' actions have impacted his access to the courts. McCurtis must show that he suffered some actual prejudice in prosecuting litigation. As pointed out by the district court, McCurtis's claim of actual prejudice in this case is entirely conclusory. McCurtis states that he was

---

[5] The *Lewis* Court specifically explained that an inmate's "right of access to the courts" does not include the right for him "to litigate effectively once in court." *Lewis*, 518 U.S. at 354 (holding that the Court's prior statements which could have been construed "to suggest that the State must enable the prisoner to discover grievances, and to *litigate effectively* once in court… have no antecedent in our [prior rulings], and we now disclaim them.") (italics in original).

10

>denied "access to the court to challenge [his] criminal convictions …." He fails to allege the exact nature of his frustrated claims, whether he actually had pending cases which were dismissed, or why he was unable to proceed on these alleged claims without the assistance of another prisoner. Because McCurtis fails to allege any specific facts showing that he suffered prejudice to any pending or contemplated direct appeals, habeas corpus applications, or nonfrivolous civil rights claims, he has not demonstrated actual prejudice as required to set forth a valid claim for the denial of access to the courts.

*Id.* (internal citations omitted).

The alleged facts and circumstances here make Diehl's case equally, if not more, untenable. Diehl does not, and cannot, satisfy the "actual injury" element for a denial of access to the courts claim. Diehl merely alleges that the Defendants' purported refusal to let him visit the Macomb Community College campus or the Warren Public Library "at the least delayed my appeal if not permanently ruined my chance for an effective appeal." (Doc. #1 at 3). As in *McCurtis*, this type of allegation is wholly conclusory and speculative, and falls well short of an allegation of an actual, legally cognizable injury. *McCurtis*, 76 F. App'x at 634; *Fields v. County of Lapeer*, 2000 WL 1720727, at *2 (6th Cir. Nov. 8, 2000) ("A speculative injury does not vest a plaintiff with standing [to pursue an access to the courts claim]…").

This is not a matter that Diehl could cure by amendment. First, the very fact that Diehl prepared and filed this litigation while he was held at the SHAR Facility demonstrates that he was not denied access to the courts while there. (Doc. #1 at 2) (listing his address as the SHAR Facility). Second, Diehl makes numerous admissions which further show his inability to plead the requisite injury. He admits that while at SHAR he was permitted to "contact[] many people in the Legal Field" (which apparently include the City of Warren's Mayor, two attorneys, an ACLU representative, and a local newspaper reporter), and that he now realizes he "could of [sic] contacted the Court of Appeals [to] explain[] my situation." (Doc. #26 at 3-5). He also

states that, "I found out in early December 2011 that I only had six months to complete the appeal. The Defendants exhumed four months of that time with their denial of [his alleged right to access to the courts]." (*Id.* at 3). However, Diehl does not explain why the remaining two months gave him inadequate time to pursue his appeal. He also admits that he was permitted to, and did, file a formal grievance about the issue, though he claims that "[n]othing ever became of [it]." (*Id.* at 4). Again, these facts show that Diehl was not denied actual access to the courts.

For all of the foregoing reasons, the court recommends granting the Defendants' respective dispositive motions.[6]

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendant SHAR Macomb, Inc.'s Motion to Dismiss (Doc. #12) be **GRANTED**, that Defendants Hope Hunter's and Melody Hardy's joint Motion to Dismiss (Doc. #22) be **GRANTED**, and that this action be **DISMISSED** as against all Defendants.

---

[6] Defendants Hunter and Hardy move for summary judgment on the grounds of qualified immunity. Under that doctrine, government officials performing discretionary functions are shielded from civil liability unless their conduct violates a clearly established constitutional right. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is premised upon the avoidance of unnecessary burdens of litigation, and therefore the privilege is an immunity from suit and not a mere defense to liability. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). In conducting the two-step inquiry into whether the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established, the Court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see also Bishop v. Hackel*, 636 F.3d 757, 772 (6th Cir. 2011). In this case, as set forth above, Diehl's denial of access to the courts claim cannot succeed. Since he has failed to show the violation of a clearly established constitutional right, Hunter and Hardy are entitled to summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."). The court declines to address Defendants Hardy's and Hunter's fact-based arguments regarding their alleged lack of involvement in the matters Diehl complains about.

Dated: April 26, 2013  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
 United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 26, 2013.

 s/Felicia M. Moses
 FELICIA M. MOSES
 Case Manager